

**FILED**
**Jul 28, 2022**
**02:35 PM(CT)**
**TENNESSEE**
**WORKERS' COMPENSATION**
**APPEALS BOARD**

# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Robert Goodman | ) | Docket No. 2019-01-0820 |
| | ) | |
| v. | ) | State File No. 64335-2018 |
| | ) | |
| Bellsouth Telecommunications, LLC, et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Audrey A. Headrick, Judge | ) | |

---

### Affirmed and Remanded

---

This interlocutory appeal concerns the employer's motions to compel a second employer's examination of the employee and to continue a previously scheduled compensation hearing. The trial court denied the employer's motion to continue, noting that the parties had set all deadlines by agreement, including the date for the compensation hearing, at a scheduling hearing and that the employer waited until after the hearing to file its motions despite knowing it wanted the employee to undergo a second employer's medical examination prior to the scheduling hearing. The employer has appealed. Having carefully reviewed the record, we affirm the trial court's denial of the employer's motion to continue, find the appeal frivolous, and remand the case for the trial court to determine an appropriate award of attorneys' fees and costs associated with the frivolous appeal.

Judge Pele I. Godkin delivered the opinion of the Appeals Board in which Presiding Judge Timothy W. Conner and Judge Meredith B. Weaver joined.

W. Troy Hart and Matthew B. Morris, Knoxville, Tennessee, for the employer-appellant, Bellsouth Telecommunications, LLC

Jeffrey W. Rufolo, Chattanooga, Tennessee, for the employee-appellee, Robert Goodman

1

**Memorandum Opinion**[1]

On August 23, 2018, Robert Goodman ("Employee") sustained an electrical shock while installing cable at a customer's property for Bellsouth Telecommunications, LLC ("Employer"). Employer accepted Employee's claim as compensable and provided workers' compensation benefits. Approximately two months after the work incident, Employee began treating with Dr. Jack Scariano, a neurologist he selected from an Employer-provided panel of physicians, who testified in his March 2022 deposition that Employee reported having been electrocuted and briefly losing consciousness.[2] Employee complained of neurological problems, difficulty walking and using his right arm, headaches, and memory problems following the work incident, as well as ringing in his ears (also known as tinnitus), generalized weakness with cramps, and double vision.

In February 2019, at Employer's request, Employee underwent an examination with Dr. Clifford Johnson, an ear, nose, and throat specialist. Dr. Johnson opined, in relevant part, that

> the electrical shock that [Employee] suffered did damage his right ear, which would account for the tinnitus that he is feeling and can contribute to the high frequency loss. There may have been some preexisting noise exposure, but I think that the most recent accident has accounted for the majority of his loss. This is a permanent loss.

Dr. Johnson assigned a combined 3% anatomical impairment to the whole body for Employee's hearing loss and tinnitus "since [Employee's] tinnitus is his most concerning problem."

Dr. Scariano's May 16, 2019 office note indicated he completed paperwork regarding work restrictions, prescribed gabapentin, and placed Employee at maximum medical improvement with a 10% anatomical impairment. Dr. Scariano noted that Employee would need continued medical care and scheduled a follow up visit for four months later. That same day, Dr. Scariano also completed a Form C-30A Final Medical Report and assigned a 3% anatomical impairment, indicating Employee would need future medical treatment for his injury, including follow up with a "neuro and ENT."[3]

---

[1] "The appeals board may, in an effort to secure a just and speedy determination of matters on appeal and with the concurrence of all judges, decide an appeal by an abbreviated order or by memorandum opinion, whichever the appeals board deems appropriate, in cases that are not legally and/or factually novel or complex." Tenn. Comp. R. & Regs. 0800-02-22-.03(1) (2020).

[2] No medical records were entered into evidence, so we have gleaned the course of Employee's treatment from the documents in the technical record and their attachments.

[3] In response to a subsequent questionnaire sent by Employer, Dr. Scariano indicated Employee would retain a 3% impairment to the body as a whole "for his headaches arising from his work related injury from

In March 2020, Employee returned to Dr. Scariano after having additional testing performed. Employee complained of "brain fog sometimes" and "difficulty processing and making simple decisions." Employee indicated he "constantly" had headaches and noted issues with focusing, fine motor detailing work, bouts of dizziness impacting his ability to walk, and a loss of control over his right hand. Dr. Scariano noted that Employee's test results suggested a "global deficit in auditory processing ability" and recommended a "full neuropsychological impairment and formal work capacity test in order to understand what [Employee's] residual impairments are for an impairment rating." He referred Employee for neuropsychological testing and ordered vestibular therapy for his dizziness.

Subsequently, on January 25, 2021, Employee returned to Dr. Scariano for a follow-up visit and indicated he was "doing the same as his last visit." Dr. Scariano evaluated Employee's vision and noticed a possible fourth cranial nerve or minor sixth nerve palsy in his right eye, noting "[t]his is common after a [traumatic brain injury]." Dr. Scariano reiterated his request for a work capacity test to be performed and recommended a follow up visit with Employee in two months.

On this same date, Dr. Scariano drafted a letter to Employer explaining that in March 2019, he had "recommended further evaluation" before assigning any further impairment rating. He noted Employee had undergone a full psychological evaluation at the Shepherd Center in Atlanta, Georgia, although the "psychological testing was done over a year and a half after I had recommended it." Moreover, he noted that "[t]he Shepherd Center has recommended speech therapy and psychotherapy which have been ordered but [have] not been seen to fruition." Dr. Scariano further noted Employee was undergoing a "downward spiral" and assigned a new impairment rating of 11% to the whole body. Dr. Scariano indicated he agreed with the Shepherd Center's recommendation for Employee to see speech and psychological therapists, and again recommended Employee undergo a work capacity test. In addition, Dr. Scariano recommended that a neuro-ophthalmologist evaluate Employee for diplopia.

On August 9, 2021, Employee returned to Dr. Scariano with continued complaints of dizziness, headaches, brain fog, and muscle spasms. Dr. Scariano again placed Employee at maximum medical improvement with the recommendation for future medical care, noting that he did not see Employee's condition improving. Approximately one week later, Dr. Scariano submitted another letter to Employer, noting he was treating Employee for "underlying neurological deficits secondary to his work comp injury." Dr. Scariano informed Employer that Employee had objective testing performed "which correlates well to neurological problems from his injury" and acknowledged he had previously assigned an impairment rating for Employee. Dr. Scariano noted Employee was having more difficulty with aphasia, speech problems, and vertigo, and would benefit from speech

---

[a] neurological standpoint." The record is unclear regarding why there is a discrepancy between the May 16 office note assigning a 10% impairment and the May 16 Form C-30A assigning a 3% impairment.

therapy, stating, "I have tried endlessly to get him approved for various treatments and this among various others have not been authorized." With regard to Employee's impairment rating, Dr. Scariano stated:

> [Employee's] previous impairment . . . was 11% to the body as a whole. Due to his underlying aphasia that has manifested now which has been documented throughout his care, he would have a class 1 aphasia as per table 13-9. This would be a 10% impairment rating to the body [as] a whole. Using the combination table, 10% and 11% impairment would be equal to 17% to the body as a whole. Needed testing and treatment for neurological symptoms with objective evidence have been repeatedly denied and without treatment, I suspect that his overall impairment is going to increase . . . .

Dr. Scariano completed another Form C-30A Final Medical Report, affirming his new impairment rating of 17% and noting Employee would need future medical treatment for his work injury.

In September 2021, Employer scheduled a second employer's examination for Employee with Dr. J. Sidney Alexander, a neuropsychiatrist, for November 2021. Upon receiving notification of the appointment, Employee advised he was not willing to attend a second examination since he "already submitted to one IME performed by Dr. Clifford Johnson in February 2019."[4]

The parties attended a scheduling hearing on April 21, 2022, nearly one month after taking Dr. Scariano's deposition on March 25. At the hearing, the parties agreed to the relevant deadlines as set by the court and to a compensation hearing scheduled for June 1, 2022. Thereafter, on May 4, Employer filed a motion to compel a medical examination with Dr. Alexander and a separate motion to continue the compensation hearing. In considering Employer's motions, the trial court noted Employer knew in September 2021 that it wanted to schedule an examination with Dr. Alexander but waited until after the April 21, 2022 scheduling hearing and after a trial date had been set to file its motion seeking to compel Employee to attend the examination. The court denied Employer's motion to continue, concluding good cause did not exist for a continuance of the case. The trial court did not rule on Employer's motion to compel Employee's attendance at an examination with Dr. Alexander. Employer has appealed.

---

[4] On October 26, 2021, then-counsel for Employee filed a motion to withdraw and an agreed motion to set aside the scheduling order. On October 28, the trial court granted the parties' motion to set aside the scheduling order and, on November 4, granted then-counsel's motion to withdraw. Thereafter, on November 11, Employee's current counsel filed a notice of appearance. Employer again raised the issue of a second employer's examination with Dr. Alexander to Employee, and he again declined to attend the appointment.

In its notice of appeal, Employer identifies the issue as whether the trial court erred in denying Employer's motion to compel and for a continuance. However, in its brief, Employer identifies the issue as whether the trial court erred in denying its motion to compel a medical examination, discussing a continuance of the compensation hearing only within the context of obtaining an employer's examination. Employer neither identified the court's denial of the motion to continue as an issue on appeal nor did it address the trial court's denial of its motion in the argument section of its brief. Accordingly, we treat the issue concerning whether the trial court abused its discretion in denying the motion for a continuance as having been waived by Employer. *See Moore & Seiferth v. Ingles Markets, Inc.*, No. 2015-02-0193, 2015 TN Wrk. Comp. App. Bd. LEXIS 54, at *4 (Tenn. Workers' Comp. App. Bd. Nov. 4, 2015).

Moreover, in its brief on appeal, Employer asserts the trial court erred by denying its motion to compel an employer's examination and "ignored Employer's statutory right to have the Employee examined by a physician of [its] choosing." Employer further contends that its request for Employee to undergo an employer's examination was reasonable and that the trial court's denial of its motion "goes against the principles of equity and fairness." Conversely, Employee argues Employer's request for an examination was unreasonable, noting that Employee already submitted to an examination performed by Dr. Clifford Johnson. Employee emphasizes this would be a *second* examination of Employee and contends the language of Tennessee Code Annotated section 50-6-204(d)(1) and Rule 35.01 of the Tennessee Rules of Civil Procedure do not provide for or contemplate multiple such examinations.[5]

We first note that the plain language of the trial court's May 17, 2022 order was limited to a denial of Employer's motion to continue the scheduled compensation hearing. While the court discussed both the motion to compel and the motion to continue, it ultimately ruled only on the motion to continue. The trial court denied Employer's motion to continue, ruling that "the Compensation Hearing will proceed as scheduled." Further, the court noted that "good cause does not exist for a continuance of the case." Based upon our review of the record, we conclude the preponderance of the evidence supports the trial court's conclusion. Employer knew months before the scheduling hearing that it wished to obtain a second employer's examination, yet it agreed to the various deadlines, including the date of the compensation hearing, at the scheduling hearing. Employer did not show good cause to support its motion for a continuance of the compensation hearing, and we conclude the trial court did not abuse its discretion in denying Employer's motion.

Moreover, pursuant to Tenn. Comp. R. and Regs. 0800-02-22-.09(4), we find Employer's appeal to be frivolous. A frivolous appeal is one that is devoid of merit or

---

[5] The record reflects that Dr. Johnson is an ear, nose, and throat specialist, while Dr. Alexander is a neuropsychiatrist. Given our resolution of this appeal, we need not address whether it would be reasonable for an employer to request medical examinations with different specialists to address different aspects of an employee's claim under Tennessee Code Annotated section 50-6-204(d)(1).

brought solely for delay. *Yarbrough v. Protective Servs. Co., Inc.*, No. 2015-08-0574, 2016 TN Wrk. Comp. App. Bd. LEXIS 3, at *11 (Tenn. Workers' Comp. App. Bd. Jan. 25, 2016); *see also Burnette v. WestRock*, No. 2016-01-0670, 2017 TN Wrk. Comp. App. Bd. LEXIS 66, at *15 (Tenn. Workers' Comp. App. Bd. Oct. 31, 2017) ("Stated another way, a frivolous appeal is one that . . . had no reasonable chance of succeeding."). Litigants "should not be required to endure the hassle and expense of baseless litigation. Nor should appellate courts be required to waste time and resources on appeals that have no realistic chance of success." *Yarbrough*, 2016 TN Wrk. Comp. App. Bd. LEXIS 3, at *10-11 (internal citations omitted). As Employer did not address the trial court's denial of the motion for continuance in its brief, which is the only motion upon which the trial court had ruled, Employer waived the only appealable issue and had no reasonable chance of succeeding on appeal. Thus, the appeal served only to delay the previously scheduled compensation hearing. We remand the case for the trial court to award Employee attorneys' fees and costs associated with the frivolous appeal.

For the reasons set out above, we affirm the trial court's denial of Employer's motion for a continuance, and we find the appeal frivolous. We remand the case for the trial court to determine an appropriate award of attorneys' fees and costs associated with the frivolous appeal. Costs on appeal are taxed to Employer.



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Robert Goodman | ) | Docket No. 2019-01-0820 |
| | ) | |
| v. | ) | State File No. 64335-2018 |
| | ) | |
| Bellsouth Telecommunications, LLC, et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Audrey A. Headrick, Judge | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 28th day of July, 2022.

| Name | Certified Mail | First Class Mail | Via Fax | Via Email | Sent to: |
|---|---|---|---|---|---|
| W. Troy Hart<br>Matthew B. Morris | | | | X | wth@mijs.com<br>mbmorris@mijs.com |
| Jeffrey W. Rufolo | | | | X | jrufolo@summersfirm.com |
| Audrey A. Headrick, Judge | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | X | penny.patterson-shrum@tn.gov |


Matthew Keene
Acting Deputy Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-532-1564
Electronic Mail: WCAppeals.Clerk@tn.gov